IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

OLGA G. VOLCSKO,

      **Plaintiff,**

      v.

NFM, INC., FREEDOM MORTGAGE
CORPORATION, AND TANNER DICKSON,

      **Defendants.**

Case No. 5:25-CV-04048-JAR-TJJ

## MEMORANDUM & ORDER

Pro se Plaintiff Olga Volcsko brings this action against Defendants NFM, Inc., Freedom Mortgage Corporation ("FMC"), and Tanner Dickson, alleging (I) no valid contract exists between Plaintiff and NFM and FMC; (II) breach of contract by NFM; (III) fraud by NFM; (IV) FMC committed perjury in state court against Plaintiff; (V) NFM engaged in deceptive acts and violated Kansas consumer protection law; (VI) Defendants fraudulently collected debt in violation of 15 U.S.C. § 1692e; (VII) Defendants conspired against Plaintiff in violation of 18 U.S.C. § 241; (VIII) Defendants devised a scheme or artifice to defraud Plaintiff in violation of 18 U.S.C. § 1341; (IX) wire fraud by NFM; (X) bank fraud by NFM; (XI) NFM and FMC committed interstate and foreign travel or transportation in and aid of racketeering enterprises; (XII) laundering of monetary instruments by NFM; (XIII) NFM and FMC engaged in monetary transactions in property derived from specified unlawful activity to the detriment of Plaintiff in violation of 18 U.S.C. § 1957; (XIV) NFM engaged in racketeering activity with FMC; (XV) NFM transported stolen securities and moneys of Plaintiff in violation of 18 U.S.C. § 2314; and (XVI) NFM and FMC attempted to evade or defeat tax.

Before the Court are Defendants' joint Motion to Dismiss (Doc. 10), Defendants' joint Motion to Stay Discovery (Doc. 30), and Plaintiff's Motion to Amend Complaint (Doc. 27).  The motions are fully briefed, and the Court is prepared to rule.  As described more fully below, the Court grants Defendants' motion to dismiss and denies Plaintiff's motion to amend as futile.  Finally, the Court denies Defendants' motion to stay discovery as moot.

## I. Legal Standards

### A. Rule 12(b)(1)

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'"[1]  Federal district courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States, or where there is diversity of citizenship.[2]  "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."[3]  The "burden of establishing" a federal court's subject-matter jurisdiction "rests upon the party asserting jurisdiction."[4]  Mere conclusory allegations of jurisdiction are not enough.[5]

Generally, a Rule 12(b)(1) motion takes one of two forms: a facial attack or a factual attack.  "First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a

---

[1] *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

[2] 28 U.S.C. §§ 1331, 1332.

[3] *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1152 (10th Cir. 2015) (citing *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013)).

[4] *Id.* at 1151.

[5] *United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc*., 190 F.3d 1156, 1160 (10th Cir. 1999).

district court must accept the allegations in the complaint as true."⁶  "Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.  When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."⁷

### B. Rule 12(b)(6)

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level"⁸ and must include "enough facts to state a claim for relief that is plausible on its face."⁹ Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."¹⁰  The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."¹¹  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."¹²  Finally, the court must accept the nonmoving party's

---

⁶ *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) (citation omitted).

⁷ *Id.* at 1003 (citation omitted).

⁸ *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004)).

⁹ *Id.* at 570.

¹⁰ *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

¹¹ *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

¹² *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[13]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[14] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[15] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[16] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[17]

## II. Background

The following relevant facts are alleged in Plaintiff's Complaint and are accepted as true for purposes of deciding Defendants' motion to dismiss.

Olga Volcsko owns and resides in a residential home in Milford, Kansas (the "Property"). On January 26, 2023, Volcsko signed a promissory note ("Note") with NFM in the amount of $365,000 to close/execute a mortgage (the "Mortgage") on the Property (collectively, the "Loan").[18] The Loan assigned the following roles: Volcsko was the borrower, NFM was the lender, and Mortgage Electronic Registration System ("MERS") was the nominee and

---

[13] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[14] *Id.* (quoting *Twombly*, 550 U.S. at 555).

[15] *Id.* at 678–79.

[16] *Id.* at 679.

[17] *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

[18] Volcsko describes the Note as an "*alleged* Promissory Note." Doc. 1 at 5 (emphasis in original).

4

mortgagee.  The Loan states Volcsko owes NFM $365,000 plus interest.  Volcsko entered into the Loan agreement under the exclusive representation and impression that she was being loaned money or funds from NFM.

The Loan was a 30-year term, requiring monthly mortgage payments to MERS until 2053.  NFM and MERS received $365,000 in value from the Note, $365,000 in the valuation of the Property, and an additional $365,000 in monthly payments for the mortgage on the Property.  Defendants received $730,000 upfront (the sum of values of the Note and Property valuation).  In total, this amounts to $1,095,000 in valuable consideration Volcsko provided at the time she signed the Loan, which she was thus obligated to pay to Defendants over the next 30 years.

On October 20, 2023, NFM assigned its mortgage rights to FMC (the "Assignment").  The Assignment was signed by Alan Baker, who represented himself to be the Vice President of MERS.  The Assignment was notarized by Florida Notary Public, Tanner Dickson, who attested that Alan Baker was physically present at the time of notarization.  Volcsko's research did not support the fact that Baker was Vice President of MERS, but rather it was a man named Darren Bronaugh.  As such, Dickson must have provided false notarization.

In April 2025, FMC filed a foreclosure action against Volcsko's Property in Kansas state court, which is ongoing.  In that action, FMC is utilizing fabricated evidence in the foreclosure proceeding, including the Assignment, which Dickson helped fraudulently notarize.  The series of events from the initial Loan with NFM, to the Assignment to FMC, to the foreclosure proceeding in Kansas state court color the 16 Claims Volcsko brings against Defendants.  The Court addresses all 16 causes of action below.

**III.   Discussion**

Defendants move to dismiss Plaintiff's Complaint under Rules 12(b)(1) & (6). Specifically, Defendants argue that: (1) the entire Complaint is based on a frivolous and unsupported theory that the Loan was not funded at closing; (2) Claims I, II, V, and VI fail to state enough facts to state claims for relief that are plausible on their face; (3) Claims V and VI are barred by their respective statute of limitations; and (4) Claims III, IV, VII–XVI advance criminal statutes that do not provide a private right of action.

On September 29, 2025, Plaintiff filed a response to Defendants' reply brief.[19] In that filing, Plaintiff, in response to Defendants' arguments that Plaintiff failed to properly plead claims for which relief can be granted as to Claims III, IV, V, VI, and VII–XVI, stated, "[w]ith respect to these particular arguments, the Court can feel free to toss out the RICO, [c]onsumer protection, and [c]riminal allegations [18 U.S.C., etc.] that were set forth against the Defendants. Those [c]laims are not absolutely necessary to spend much time arguing about."[20] Accordingly, the Court understands this to mean Plaintiff is no longer asserting these claims; however, the Court will explain below that these claims would have nonetheless failed to survive Defendants' motion to dismiss.

Finally, the Court is mindful that Plaintiff proceeds pro se; therefore, the Court must construe her pleadings liberally.[21] However, the Court cannot assume the role of advocate,[22] or

---

[19] Doc. 17. The Court notes Plaintiff never filed a motion for leave to file Doc. 17, which may not be filed as a matter of right. D. Kan. Rule 15.1. However, cognizant of Plaintiff's pro se status and the fact Defendants do not object to the filing, the Court will consider Doc. 17 in its ruling on Defendants' motion to dismiss.

[20] Doc. 17 at ¶ 1.

[21] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[22] *Id.*

"construct a legal theory" on Plaintiff's behalf.[23] Additionally, a pro se litigant is not excused from complying with the rules of the court and is subject to the consequences of noncompliance.[24] As explained below, the Court grants Defendants' motion to dismiss.

### A.   Criminal Law Causes of Action: Claims III, IV, VII–XVI

The U.S. Supreme Court has held that "[a] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."[25]  "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person."[26]  As above, Plaintiff is no longer pursuing the following causes of action: (Claim III) making false information in violation of K.S.A. § 21-5825; (Claim IV) committing perjury in violation of K.S.A § 21-5903; (Claims VII–XVI) violating the criminal laws as set forth in U.S.C. §§ 241, 1341, 1343, 1344, 1952(a)(1)(3)(A) & (b)(3), 1956(a)(1)(A)(i)(ii) & (B)(i)(iii), 1957, 1961(1)(B), 2314, and  7201.  However, even if Plaintiff did not drop these claims from her Complaint, all would necessarily fail because they all do not support a private right of action in civil suits.[27]

---

[23] *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

[24] *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994); the Court notes Plaintiff has violated the District of Kansas Local Rules in her various filings, including filing out of time without receiving leave to do so (D. Kan. Rule 15.1) and filing in excess of the allotted page limits (D. Kan. Rule 7.1(d)).

[25] *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).

[26] *Escalante v. Escalante*, No. 22-CV-2485-TC-TJJ, 2023 WL 395971, at *2 (D. Kan. Jan. 25, 2023) (citations omitted).

[27] *Cahail v. United States*, No. 25-1016-JWB-BGS, 2025 WL 1530580, at *2 (D. Kan. May 29, 2025) (finding no private right of action under K.S.A. § 21-5825); *Tahchawwickah v. Fenn*, No. 24-3145-JWL, 2024 WL 4443211, at *3 (D. Kan. Oct. 8, 2024) (finding no private right of action under K.S.A. § 21-5903); *Helmers v. Journey*, No. 25-1053-JWB-BGS, 2025 WL 1616458, at *5 (D. Kan. May 2, 2025) (finding no private right of action under 18 U.S.C. §§ 241, 1341, or 1961); *Lopez v. COMPA Indus. Inc.*, No. CIV 23-0303 JB/LF, 2024 WL 1112065, at *9 (D.N.M. Mar. 14, 2024) (finding no private right of action under 18 U.S.C. § 1343); *Chavez v. United States*, No. CIV 21-0872-JB-SCY, 2021 WL 4948191, at *2 (D.N.M. Oct. 25, 2021) (finding no private right of action under 18 U.S.C. § 1344); *Goode v. Gaia, Inc.*, No. 20-CV-00742-DDD-KLM, 2022 WL 596292, at *9 (D. Colo. Feb. 28, 2022) (finding no private right of action under 18 U.S.C. § 1952); *Davis v. Vestwell Holdings, Inc.*, No. 2:24-CV-02279-JAR-ADM, 2024 WL 5245250, at *4 (D. Kan. Dec. 30, 2024) (finding no private right of action under 18 U.S.C. § 1956); *MMXII, Inc. v. QFA Royalties LLC*, No. 13-CV-00253-MSK, 2013 WL 599557, at *2–3 (D. Colo. Feb. 15, 2013) (finding no private right of action under 18 U.S.C. § 1957); *Walz v. Repros Recovery*,

Construing pro se Plaintiff's Complaint liberally as the Court must, the Court now addresses whether Plaintiff advances a plausible claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") via the civil cause of action permitted by 18 U.S.C. § 1964(c). To survive a Rule 12(b)(6) motion, a civil RICO claim must adequately allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."[28] Here, the Court liberally construes Plaintiff's Complaint as alleging fraud as the predicate racketeering activity to sustain a civil RICO action, although the Complaint does not explicitly state this allegation.

At the pleading stage, Fed. R. Civ. P. 9(b) requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud or mistake."[29] Here, Plaintiff falls short of this requirement regardless of the fraud theory advanced. First, Plaintiff simply asserts Defendants executed the Assignment under "fraudulent pretenses" because her Yahoo! search was unable to yield evidence that a signatory, Baker, worked for MERS. Plaintiff does not provide any additional basis for this allegation. Next, Plaintiff alleges NFM made fraudulent representations to receive the benefit of economic considerations from Plaintiff. Plaintiff does not expand on what comprises these fraudulent representations. The Court is unable to discern any additional theories of fraud as a predicate RICO activity from Plaintiff's Complaint. Plaintiff's allegations do not provide the Court the particularity required by Rule 9(b), as they simply allege conclusory allegations of fraud. As such, Plaintiff has not met her requisite burden under Fed. R. Civ. P. 9(b) as to Claims III, IV, and VII–XVI.

---

No. 2:24-CV-809-TC-DBP, 2025 WL 615363, at *1 (D. Utah Feb. 26, 2025) (finding no private right of action under 18 U.S.C. § 2314); *Payn v. Gerald E. Kelley*, No. CIV-15-1089-D, 2015 WL 7779701, at *3 (W.D. Okla. Dec. 2, 2015) (finding no private right of action under 18 U.S.C. § 7201).

[28] *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

[29] Fed. R. Civ. P. 9(b).

## B.     KCPA and FDCPA Causes of Action: Claims V & VI

As above, Plaintiff is no longer pursuing causes of action under: (Claim V) the Kansas Consumer Protection Act (the "KCPA"); and (Claim VI) the Fair Debt Collections Practice Act ("FDCPA"). But even if Plaintiff did not drop these claims, the KCPA claim would fail because Plaintiff did not meet her Rule 9(b) standard on this claim, and her FDCPA claim would fail because Plaintiff fails to allege whether any Defendant is a debt-collector under the FDCPA. Before addressing these legal failures, the Court first explains why Defendants' arguments that Claims V and VI are time-barred under their respective statute of limitations are misplaced.

Defendants argue that Plaintiff's KCPA claim is time-barred by a two-year statute of limitations under K.S.A. § 60-513. However, the KCPA is governed by the *three-year* statute of limitations under K.S.A. § 60-512.[30] As such, utilizing the dates in the Complaint, which are the same dates used in Defendants' two-year calculation, the Court finds Plaintiff's KCPA claim is not time-barred under the three-year statute of limitations. Next, Defendants argue Plaintiff's FDCPA claim is time-barred under 15 U.S.C. § 1692k(d)'s one-year statute of limitations. The one-year statute of limitations for an FDCPA claim begins to run on the date on which the alleged FDCPA violation occurs.[31] Defendants argue this clock began on January 26, 2023, when Plaintiff alleges the Loan wasn't properly funded at its inception. However, Plaintiff actually alleges FMC made false and deceptive representations as means to collect Plaintiff's debt but does not provide the Court with the date the event first occurred. The FDCPA clock begins when the abusive debt collection practice begins, and not when a loan was allegedly first

---

[30] *See Marksberry v. FCA US LLC*, 481 F. Supp. 3d 1229, 1235 (D. Kan. 2020).

[31] *Rotkiske v. Klemm*, 589 U.S. 8, 10 (2019).

improperly funded. As such, Defendants' argument misplaces the instigating conduct. Nonetheless, both claims fail for the reasons below.

First, the "requirement of pleading fraud claims with particularity under Fed. R. Civ. P. 9(b) applies to allegations of deceptive trade practices under the KCPA."[32] Plaintiff does not provide the Court the requisite particularity to sustain this claim. Plaintiff's Complaint provides mere conclusory allegations that NFM made false representations to obtain documents evidencing debt owed from Plaintiff to NFM, but fails to "set forth the time, place, and contents of the false representation[s], [or] the identity of the party making the false statements and the consequences thereof."[33] Second, and finally, to successfully plead an FDCPA claim, a plaintiff must adequately plead that (1) the plaintiff is a "consumer" under § 1692a(3); (2) the debt at issue arose out of a transaction entered into primarily for personal, family, or household purposes; (3) the defendant is a debt collector under § 1692a(6); and (4) through its acts or omissions, the defendant violated the FDCPA.[34] Here, Plaintiff never attempts to plead that any of the Defendants are a debt collector under the applicable statute, nor which provision of the FDCPA Defendants allegedly violated. Further, Plaintiff's reply brief also fails to respond to Defendants' arguments concerning these elemental omissions. As such, Plaintiff failed to adequately plead Claims V and VI.

### C.   Contract Causes of Action: Claims I and II

"[A] federal court sitting in diversity must apply the substantive law of the state in which it sits, including the forum state's choice-of-law rules."[35] Kansas applies the Restatement (First)

---

[32] *In re Universal Serv. Fund Tel. Billing Pracs. Litig.*, 300 F. Supp. 2d 1107, 1150 (D. Kan. 2003).

[33] *Lawrence Nat'l Bank v. Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991).

[34] *Tavernaro v. Pioneer Credit Recovery, Inc.*, 43 F.4th 1062, 1067 (10th Cir. 2022).

[35] *Boyd Rosen & Assocs., Inc. v. Kan. Mun. Gas Agency*, 123 F.3d 1351, 1352–53 (10th Cir. 1997).

of Conflict of Laws in addressing choice of law issues.[36]  Kansas courts apply the rule of *lex loci contractus* to breach of contract claims.[37]  Under this rule, the law of the state where the parties made the contract controls.[38]  Further, in Kansas, a contracted choice of law provision controls all questions of law flowing from the parties' contract and any breach thereof.[39]  Here, the parties do not provide any facts showing where the contract was formed.  However, both parties use Kansas law in their arguments; the Court will use Kansas law to resolve this motion.[40]  Therefore, the Court applies Kansas substantive law below.

*Claim I*

Plaintiff seemingly provides two distinct allegations in Claim I: (1) that no valid contract exists between Plaintiff and NFM and FMC; and (2) that the Assignment between NFM and FMC was not a valid contract.  The Court addresses each in turn.  First, Plaintiff alleges the Loan was not a valid agreement because there was no meeting of the minds or valid consideration.[41]  While Plaintiff's Complaint alleges there was an offer and acceptance, Plaintiff alleges the Loan fails to provide the following: (1) whether the borrower received the Loan from the Lender; (2) the intent of the Lender actually being a lender; (3) evidence of actual money being lent; (4) a signature from any bank officers authorizing the transfer of money; (5) a signature from NFM

---

[36] *See, e.g.*, *In re K.M.H.*, 169 P.3d 1025, 1031–32 (Kan. 2007).

[37] *Mirville v. Allstate Indem. Co.*, 71 F. Supp. 2d 1103, 1107 (D. Kan. 1999).

[38] *Id.*

[39] *Pepsi–Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005) (applying Kansas law).

[40] *Jamieson v. Vatterott Educ. Ctr., Inc.*, 473 F. Supp. 2d 1153, 1159 (D. Kan. 2007) (applying Kansas law to a breach of contract claim at the motion to dismiss stage where the parties failed to present any facts showing where the contract was formed but utilized Kansas law in their briefing).

[41] While Plaintiff alleges there was no consideration provided by NFM, Plaintiff alleges she provided "multiple considerations at the inception of the Loan." *See* Doc. 1 at 10.  Further, Plaintiff's reply to the Defendants' response brief explicitly states, "Plaintiff agrees and agreed that Consideration was [i]mported, but Defendant failed and refused twice to provide any [a]rguments on how that [c]onsideration was [i]mported." *See* Doc. 17 at 2.

11

agreeing to the terms of the mortgage; (6) a signature from NFM agreeing to the terms of the Note; or (7) a signature from NFM agreeing to the Loan.

The Court finds Plaintiff does not plausibly allege that the Loan is invalid due to a lack of consideration or meeting of the minds. Under Kansas law, a contract must be supported by consideration in order to be enforceable.[42] "Consideration is defined as some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility, given, suffered, or undertaken by the other."[43] Plaintiff's argument concerning consideration is hard to pin down. The Loan in its most fundamental form is simply an agreement that NFM will lend Plaintiff the amount of money necessary for Plaintiff to purchase her Property, and, in return, Plaintiff will pay back NFM some amount of money. In fact, Plaintiff's Complaint alleges she lives in and owns the Property, which is subject to the Loan she signed.[44] Further, Plaintiff explicitly agrees that "[c]onsideration was [i]mported, but Defendant failed and refused twice to provide any [a]rguments on *how* that [c]onsideration was [i]mported."[45] Plaintiff's clarification is irrelevant to the issue of consideration and fails to push Plaintiff's allegation beyond a mere formulaic recitation that a valid contract requires consideration.[46]

Plaintiff alleges there was no meeting of the minds on the Loan for the following list of reasons: (1) NFM failed to sign and agree to the terms and conditions of the contracts accepting any liability; (2) there was certainly no fair understanding between the Plaintiff and NFM

---

[42] *Barfield v. Com. Bank, N.A.*, 484 F.3d 1276, 1278 (10th Cir. 2007) (applying Kansas law).

[43] *Id.* at 1278–79 (quoting 17A Am. Jur. 2d, Contracts § 113, at 129).

[44] This alone is sufficient to establish consideration. K.S.A. § 16-107 ("All contracts in writing, signed by the party bound thereby, or his authorized agent or attorney, shall import a consideration.").

[45] Doc. 17 at 2 (emphasis added).

[46] *Iqbal*, 556 U.S. at 678 (holding that a pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand).

concerning all the objectives of the agreement; (3) there were no observable manifestations of any intentions shown by the Defendant to perform the action of lending money; (4) Defendant failed to produce any observable manifestations of any stated intentions to lend money, or be liable to any obligations whatsoever under the contracts."[47]

"To constitute a meeting of the minds there must be a fair understanding between the parties which normally accompanies mutual consent and the evidence must show with reasonable definiteness that the minds of the parties met upon the same matter and agreed upon the terms of the contract."[48]  Plaintiff alleges that NFM offered her money to purchase her Property, that she accepted that offer, and that she "continued to [p]erform in [c]ompliance with the [c]ontract in accordance with its [t]erms and [c]onditions by making [m]onthly payments of $2853.33."[49]  Yet, Plaintiff alleges without any support that there was no meeting of the minds because the Note and Mortgage did not expressly state NFM would lend money to Plaintiff. This argument directly conflicts with the plain language of the Note Plaintiff attached to her Complaint.[50]  Regardless, Plaintiff's own words that she accepted the Loan, owns and resides in the Property, and is obligated to pay that loaned amount back to NFM "show with reasonable definiteness that the minds of the parties met upon the same matter and agreed upon the terms of the contract."[51]

---

[47] Doc. 1.

[48] *Steele v. Harrison*, 552 P.2d 957, 962 (Kan. 1976).

[49] Doc. 1 at 22.

[50] Doc. 4 at 15 ("In return for a Loan that I have received, I promise to pay U.S. $365,000.00 to [NFM]."); *MacArthur v. San Juan County*, 309 F.3d 1216, 1221 (10th Cir. 2002) (holding a court may consider a document, without converting the motion into one for summary judgment, if the complaint refers to this document and it is central to the plaintiff's claim).

[51] *Steele*, 552 P.2d at 962.

Second, and lastly, Plaintiff alleges the Assignment between NFM and FMC is not a valid contract due to Plaintiff's inability to find evidence that the Assignment's signatory, Alan Baker, ever worked for MERS; as such, Dickson must have notarized a fraudulent agreement. The Court need not address whether Plaintiff is simply repacking her fraud claims in this allegation, or whether Plaintiff's claimed Yahoo! search for Baker's employment satisfies her burden at this stage. Simply, Plaintiff's allegations are irrelevant because she has no standing to challenge the assignment; her only interest would be to not pay the loan amount twice.[52]

*Claim II*

In Claim II, Plaintiff alleges breach of contract by NFM due to NFM's alleged failure to lend Plaintiff money as provided for in the Loan. To succeed on a claim for breach of contract under Kansas law, a plaintiff must show that (1) a contract existed between the parties, (2) sufficient consideration supported the contract, (3) plaintiff performed or was willing to perform in compliance with the contract, (4) defendant breached the contract and (5) defendant's breach caused plaintiff to suffer damages.[53] Plaintiff plausibly alleges performance, but fails to plausibly allege the existence of a contract, sufficient consideration, or Defendants' breach. Because of these primary failures, the Court need not address damages.[54] First, Plaintiff

---

[52] *Missouri Bank & Tr. Co. v. Gas-Mart Dev. Co.*, 130 P.3d 128, 133 (Kan. Ct. App. 2006) (affirming a district court's finding that defendants do not have standing to challenge an assignment contract they were not parties to).

[53] *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013).

[54] *Roberts v. U.S. Dep't of Veterans Affs.*, No. 20-CV-01358-JAR-KGG, 2021 WL 1426767, at *4 (D. Kan. 2021) ("It is fundamental that federal courts do not render advisory opinions and that they are limited to deciding issues in actual cases and controversies."); *see, e.g., Fashion House, Inc. v. KMart Corp.*, 892 F.2d 1076, 1095 (1st Cir. 1989) (emphasizing that federal courts should avoid rendering advisory opinions that "deal with a covey of birds which may never come home to roost").

14

explicitly alleges in Claims I and II that there is no valid contract.[55]  Second, Plaintiff alleges there was not sufficient consideration to support the contract.[56]

Third, Plaintiff plausibly alleges that she performed under the Loan because she contractually tendered her promise to pay back the loaned $365,000 and made monthly payments in the amount of $2,853.33 (although the Court notes this performance apparently stopped after 10 months).[57]  Fourth, and finally, Plaintiff alleges NFM breached the Loan when it failed to lend any sum of money to Plaintiff.  This allegation is belied by Plaintiff's own statements that she lives in and owns the Property subject to the Loan, the fact that Plaintiff tendered approximately 10 months of payments to Defendants as required by the Loan, and that Plaintiff signed the Note, which stated in the first clause: "[i]n return for a loan that [Plaintiff] [has] received . . ."[58]  Accepting all of Plaintiff's allegations as true, the Court is still unable to accept the legal conclusion that Defendant breached.[59]  In sum, Plaintiff fails to plausibly allege her breach of contract claim.

### D. Motion for Leave to File Amended Complaint

On December 8, 2025, Plaintiff filed a second Motion for Leave to Amend Complaint. Plaintiff seeks to amend her May 7, 2025, Complaint to add MERS as a defendant and assert the following 10 new "claims and legal theories:"

> (1) [f]ailure to comply with the statutory definition of a [p]romissory [n]ote; (2) Freedom Mortgage abandoned title to the real property and unlawfully infringed upon Plaintiff's property rights; (3) Freedom Mortgage attempted to enforce an

---

[55] *Compare* Doc. 1 at 10, *with* Doc. 1 at 20.

[56] Doc. 1 at 21.

[57] *See* Doc. 1 at 21 ("Plaintiff was clearly willing to Perform, and continued to Perform in [c]ompliance with the [c]ontract in accordance with its [t]erms and [c]onditions by making [m]onthly payments of $2853.33. Plaintiff made a total of $28,533.00 in [m]onthly [p]ayments, evidenced by [b]ank [s]tatements.").

[58] Doc. 4 at 15.

[59] *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (explaining that a court is "not bound to accept as true a legal conclusion couched as a factual allegation").

instrument in state court without legal standing and with a defective chain of title; (4) [t]he purported [a]ssignment of the [m]ortgage failed to convey any legal rights to Freedom Mortgage; (5) [t]he terms of the Volcsko [m]ortgage have been violated, rendering the Volcsko [m]ortgage unenforceable; (6) [i]nterest in the Volcsko intangible obligation cannot be rejoined to any interest in the Volcsko [n]ote or the Volcsko [m]ortgage; (7) Freedom unlawfully attempted to enforce a bifurcated mortgage contract with stripped-away interest; (8) MERS unlawfully received and assigned a void and unenforceable contract; (9) MERS unlawfully received monthly payments from Plaintiff despite lacking legal authority or beneficial interest; (10) [r]emoval of RICO, [m]oney [l]aundering, etc., and other [c]laims that did not have a [p]rivate right of action, and replaced with those stated above.[60]

"The decision to grant leave to amend a complaint, after the permissive period, is within the trial court's discretion, Fed. R. Civ. P. 15(a), and will not be disturbed absent an abuse of that discretion."[61] It is "well settled" in the Tenth Circuit "that untimeliness alone is a sufficient reason to deny leave to amend."[62] A court may properly deny leave to amend if the amendments would prove futile. Futility may warrant denial of leave to amend if the amended complaint would be subject to dismissal.[63] For the reasons stated below, the Court denies Plaintiff's motion for leave to amend as the amendments sought would be subject to dismissal.

The Court would decline to exercise jurisdiction over the above additional claims, as the *Younger* abstention doctrine precludes the Court from interfering with an ongoing state judicial proceeding.[64] "In the absence of extraordinary circumstances, the *Younger* doctrine directs federal courts to refrain from interfering in ongoing state civil proceedings."[65] *Younger*

---

[60] Doc. 27 at 2; the Court notes Plaintiff's Proposed Amended Complaint attached to Doc. 27 fails to include a redlined version of the proposed amendments as required by D. Kan. Rule 15.1(a)(3).

[61] *Woolsey v. Marion Labs., Inc.*, 934 F.2d 1452, 1462 (10th Cir. 1991).

[62] *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

[63] *See Mountain View Pharm. v. Abbott Lab'ys*, 630 F.2d 1383, 1389 (10th Cir. 1980).

[64] *See, e.g., Carson v. Gissi*, No. 21-4053-JAR-KGG, 2021 WL 3710023, at *2 (D. Kan. Aug. 20, 2021) (finding the *Younger* abstention doctrine required the court to abstain where there was an ongoing state foreclosure case).

[65] *Ysais v. Children Youth & Family Dep't*, 353 F. App'x 159, 161 (10th Cir. 2009) (citing *Morrow v. Winslow*, 94 F.3d 1386, 1393 (10th Cir. 1996)).

abstention "is the exception, not the rule."[66] In determining whether *Younger* abstention is appropriate, a court considers whether: "(1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies."[67] "Once these three conditions are met, *Younger* abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain."[68]

First, the Court finds there is an ongoing state proceeding. Plaintiff's amended complaint notifies the Court that Defendants "are unlawfully trying to foreclose upon Plaintiff's home while misrepresenting material facts, their true legal standing, and other obligations associated with the mortgage loan."[69] Further, Exhibit 8 to Plaintiff's amended complaint also references that same foreclosure action currently pending in the 8th Judicial District Court of Geary County, Kansas.[70] Defendants agree. As such, the Court finds there is an ongoing state proceeding.

Second, the Kansas state foreclosure action is an adequate forum to hear the additional claims. The claims in Plaintiff's amended complaint all concern the scope, validity, and enforceability of the Assignment, Note, Mortgage, and Loan at issue in the pending state action. However, Plaintiff argues that since she "has clearly identified new and substantive [a]rguments

---

[66] *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1267 (10th Cir. 2002) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992)).

[67] *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003) (quoting *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999)); *see Brown v. Day*, 555 F.3d 882, 887 (10th Cir. 2009).

[68] *Crown Point I*, 319 F.3d at 1215 (citing *Seneca-Cayuga Tribe of Okla. v. Okla. ex rel. Thompson*, 874 F.2d 709, 711 (10th Cir. 1989)).

[69] Doc. 27-1 at 4.

[70] *See* Doc. 27-2 (Affidavit of Joseph R. Esquivel Jr.) (citing *Freedom Mortgage Corporation v. Olga Volcsko*, case no. GE-2025-cv-000046 ("Foreclosure Action")).

supported by [s]tatute [State and Federal], this Court must take [j]urisdiction over this [c]ase."[71] Plaintiff further asserts that there are "pre-existing [f]ederal [q]uestions against the Defendants which the [s]tate [c]ourt would not have [j]urisdiction over, such as the application of 12 U.S.C. § 1813(1)(1) in the context of a [m]ortgage [t]ransaction and the specific representation made by the Defendant NFM, Inc that they were [l]ending [m]oney to the Plaintiff."[72]  The Court disagrees that this clarification renders the state court an inadequate forum.  As an initial matter, 12 U.S.C. § 1813(1)(1) is not an actual statute under federal code; and to the extent Plaintiff meant to cite anywhere else in Section 1813, that entire section concerns definitions of "bank" and related terms without providing a private right of action.[73]

Even assuming the amended complaint is adequately plead, the added claims all concern Loan and chain-of-title issues that are at the heart of the foreclosure, which Plaintiff also asks this Court to enjoin.  Further, Plaintiff "bears the burden of showing that state procedural law bars the presentation of the claims, making the state proceeding an inadequate forum."[74] Plaintiff has failed to make this showing.  As such, if a plaintiff fails to adequately present the federal claims, "a federal court should assume that the state proceedings will afford an adequate remedy, in the absence of unambiguous authority to the contrary."[75]  As a result, the Court finds the state court affords Plaintiff an adequate forum.

Third, and finally, the Court finds the state foreclosure proceeding concerns important state interests and matters, which traditionally look to state law for their resolution or implicate

---

[71] Doc. 29 at 5.

[72] *Id.*

[73] 12 U.S.C. § 1813.

[74] *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14–15 (1987) (citation omitted).

[75] *Lofland v. City of Shawnee*, No. 16-02183-CM, 2016 WL 5933514, at *3 (D. Kan. Oct. 12, 2016) (quoting *Pennzoil Co.*, 481 U.S. at 15).

separately articulated state policies.  Plaintiff does not rebut this point, and explicitly asks this Court to enjoin the state foreclosure proceeding.  "[T]he Supreme Court has held it is 'beyond question' that states have an important and essential interest in enforcing rights to and against real estate."[76]  And courts routinely find state foreclosure actions are the kind of state proceedings in which the *Younger* doctrine applies.[77]  As such, the Court finds the Kansas state foreclosure action concerns important state property interests.  All three conditions are met, and the Court does not find, nor does Plaintiff argue, extraordinary circumstances exist so that the Court should not abstain.  Finally, Plaintiff's amended complaint seeks to add MERS as a defendant.  The addition of MERS does not resolve the *Younger* doctrine issues detailed above, nor does the addition change the Court's motion to dismiss analysis.  As such, the Court denies Plaintiff's motion to amend as futile, as the amended complaint simply adds claims subject to dismissal under the *Younger* abstention doctrine, and does not alter any of the foregoing.

    **E.**    **Motion to Stay Discovery**

Because Plaintiff's claims are subject to dismissal and the Court denies Plaintiff's motion to amend, the Court denies Defendants' joint motion to stay discovery as moot.

---

[76] *Cumpton v. Wonnell*, No. 2:25-CV-02619-DDC-TJJ, 2025 WL 3906238, at *4 (D. Kan. Nov. 14, 2025) (citing *BFP v. Resol. Tr. Corp.*, 511 U.S. 531, 544 (1994)).

[77] *Id.* (applying *Younger* to a state foreclosure proceeding); *Shaffer v. Heitner*, 433 U.S. 186, 207–08 (1977) (recognizing a state's "strong interests in assuring the marketability of property within its borders and in providing a procedure for peaceful resolution of disputes about the possession of that property"); *Gray v. Pagano*, 287 F. App'x 155, 157–58 (3d Cir. 2008) (affirming district court's abstention under *Younger* where state-court foreclosure action was pending and "[a]ny relief that could be granted by the district court would directly impact Pennsylvania's interest in protecting the authority of its judicial system"); *Doscher v. Menifee Cir. Ct.*, 75 F. App'x 996, 997 (6th Cir. 2003) (affirming district court's application of *Younger* abstention and finding important state interest in mortgage foreclosure); *Borkowski v. Fremont Inv. & Loan of Anaheim, Cal.*, 368 F. Supp. 2d 822, 828 (N.D. Ohio 2005) (court would be required to abstain from addressing matters presented in federal complaint under *Younger* where these matters were the subject of a pending state foreclosure matter, which is of paramount state interest); *Logan v. U.S. Bank Nat. Ass'n*, 2010 WL 1444878 at *3 (C.D. Cal. April 11, 2010) ("[P]roperty rights have historically been considered an area of state concern."); *3005 Cedar, LLC v. City of Minneapolis*, 2010 WL 455307, at *3 (D. Minn. Feb. 3, 2010) (finding important state interest in property rights).

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss (Doc. 10) is **granted**, and Defendants' Motion to Stay Discovery (Doc. 30) is **denied as moot**. Plaintiff's Motion to Amend Complaint (Doc. 27) is **denied**.

**IT IS SO ORDERED.**

Dated: February 25, 2026

                                              S/ Julie A. Robinson
                                              JUDGE JULIE A. ROBINSON
                                              UNITED STATES DISTRICT JUDGE